**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| LEO WINER and MICHAEL J. PEPITONE,<br><br>    Plaintiffs,<br><br>vs.<br><br>EAGLE BULLION GROUP, INC.; ERIC WEIGAND, M.D.; YOUNG FINANCIAL, INC.; INTEGRITY CAPITAL HOLDINGS CO; MICHAEL D. YOUNG; TERRY SACKA; and SIDNEY SACKA,<br><br>    Defendants. | 2:11-CV-01268-ECR-VCF<br><br>**Order** |

Now pending are Plaintiffs' Motion to Expedite Discovery and Trial (##15, 16), and Defendants' Motion to Compel Arbitration (#19) and Motion to Stay Court Proceedings (#20).

## **I. Background**

The Complaint (#1) alleges that in summer 2009, Plaintiffs were solicited by Defendant Eric Weigand ("Weigand"), the Director of Operations of Defendant Eagle Bullion Group, Inc. ("Eagle") to open individual accounts with Eagle. (Compl. at ¶ 14 (#1).) On July 29, 2009, Plaintiff Leo Winer ("Winer") entered into a written agreement governing his account with Eagle. (Defs.' Opp'n Pls.' Mot. Expedite Disc. at Ex. 2 (#21-2).) Plaintiff Michael J. Pepitone ("Pepitone") signed an identical agreement on August 4, 2009. (Id. at Ex. 1.)

The written account agreements each contain an arbitration clause whereby the parties agreed that any dispute relating to the accounts will be submitted to binding arbitration in the State of Florida, governed by the substantive and procedural laws of Palm Beach County, Florida.  (Id.)

Upon being booked by Eagle on or about August 8, 2009, the gold coins delivered by Winer were valued at $112,650, and Pepitone's coins were valued at $106,300.  (Compl. at ¶¶ 19-20 (#1).)  The Complaint (#1) further alleges in detail a number of transactions Defendants engaged in with regard to Plaintiffs' accounts, charging Plaintiffs various fees and interest from time to time.  (See id. at ¶¶ 21-22, 27-32.)  Plaintiffs sustained great losses and allege that Defendants concealed the true nature of these investments, that Plaintiffs did not know that they were involved in futures contracts using their gold as leverage.  (Id. at ¶¶ 30, 32, 36.)

Plaintiffs filed their Complaint (#1) on August 5, 2011.  On September 27, 2011, Plaintiffs filed a Motion to Expedite Discovery and Trial (##15, 16) on the grounds of the Plaintiffs' advanced age: Plaintiff Winer is ninety-seven years old and in declining health and Mr. Pepitone is eighty years old.  Defendants responded (#21) on October 7, 2011 and Plaintiffs replied (##23, 24) on October 14, 2011.

On September 29, 2011, Defendants filed a Motion to Compel Arbitration (#19) and a Motion to Stay Court Proceedings (#20) pending the arbitration.  Plaintiffs responded (##25, 26) on October 14, 2011.  It appears that Defendants have not replied.

2

## II. Legal Standard

Federal law governs arbitration issues in agreements affecting interstate and foreign commerce. ATSA of Cal. v. Cont'l Ins. Co., 702 F.2d 172, 174 (9th Cir. 1983). A strong federal policy favors arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Corp., 473 U.S. 614 (1985). The federal Arbitration Act ("FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2. "The [FAA] requires courts to compel arbitration in actions where the parties have previously agreed to arbitrate their contractual disputes." Bennett v. Liberty Nat'l Fire Ins. Co., 968 F.2d 969, 970 (9th Cir. 1992). Furthermore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) superseded by statute on other grounds.

## III. Discussion

Defendants seek to compel Plaintiffs to submit their claims to arbitration under the arbitration clause contained in the contract Plaintiffs signed to open their accounts with Defendant Eagle. The arbitration clause provides as follows:

> The parties agree that any disputes relating to this Account will be submitted to binding arbitration. The venue for any such arbitration shall be exclusive in the State of Florida and all parties agree that any arbitration award entered shall be binding and convertible to a State of Florida judgment subject to the laws of the State of Florida and further subject to any modifications thereof permissible thereunder. The parties hereby accordingly waive their right to any other remedy or to proceed with

3

```
       any court actions and further hereby waive jurisdiction and
       venue.

       This account and the activities contemplated hereunder
       shall be governed by the substantive and procedural laws of
       Palm Beach County, the State of Florida without respect to
       Florida conflict of law rules and venue of any dispute
       resolution shall likewise be in Palm Beach County, State of
       Florida without respect to Florida conflict of law rules.
```

(Defs.' Opp'n Pls.' Mot. Expedite Disc. & Trial at Ex. 2 (#21-2).)

Plaintiffs argue that the arbitration clause does not constitute a valid arbitration agreement because it does not specify who the arbitrator will be and/or the arbitrator selection process. This, however, is not fatal to the arbitration agreement. Where the contract is ambiguous or otherwise does not indicate what arbitral forum the parties have selected, there is left "only one conclusion, that the parties intended to leave the issue open." Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp., 819 F.2d 247, 249-250 (9th Cir. 1987) (citing Oil Basins Ltd. v. Broken Hill Proprietary Co., 613 F. Supp. 483, 487 (S.D.N.Y. 1985)). In Bauhinia, the Ninth Circuit upheld the District Court's ordering of arbitration before the American Arbitration Association ("AAA") where the contract did not specify the arbitral forum and the parties failed to resolve the problem of "when, where and how without court intervention." 819 F.2d at 250. Here, the arbitration clause validly leaves the issue of arbitral forum open. In the event the parties cannot agree upon an arbitral forum and/or an arbitrator selection process, the Court may later provide for these terms. Such an omission is not fatal to the agreement to arbitrate.

4

Plaintiffs further argue that the Court should order that the arbitration take place in Las Vegas, Nevada due to Plaintiffs' advanced age and difficulties in traveling to Florida. Plaintiffs contend that the FAA authorizes the Court to order arbitration in this District. See 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."). However, this is only true where the parties have not already specified a location. Bauhinia, 819 F.2d at 250 ("In the absence of a term specifying location, a district court can only order arbitration within its district."). Here, the contract expressly and unambiguously provides the location of arbitration - the State of Florida. The Court must therefore uphold the parties' agreement.

The Court further finds that the arbitration agreement is not unconscionable.

### IV. Conclusion

For the foregoing reasons, the Court must compel the parties to arbitrate in accord with their agreement. The Court will give the parties a chance to agree among themselves upon the specifics that the arbitration agreement has left open: the arbitral forum, the arbitrators, and/or arbitration selection process. Further, the Court will grant Defendants' Motion to Stay the Proceedings (#20) pending the outcome of the arbitration. Because the Court grants the Motion to Compel Arbitration (#19), Plaintiffs' Motion to Expedite Discovery and Trial (##15, 16) will be denied as moot, as discovery issues are for the arbitral forum to decide.

5

**IT IS, THEREFORE, HEREBY ORDERED** that Plaintiffs' Motion to Expedite Discovery and Trial (##15, 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Arbitration (#19) is **GRANTED**.  The parties shall have twenty-one (21) days within which to confer to determine the arbitral forum and how the arbitrators will be selected and file a joint report in this Court.  In the event the parties are unable to agree upon these arbitration terms, the Court will issue an order providing for them.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Proceedings (#20) is **GRANTED** for a period of one (1) year.  A status conference is hereby set for Monday, November 5, 2012 at 10:00am. In the event a status report is filed within fifteen (15) days of the date set for the status conference, the status conference will be vacated.

DATED: November 1, 2011.

_____
UNITED STATES DISTRICT JUDGE